| UNITED STATES DISTRICT COURT | SOUTHERN DISTRICT OF TEXAS |
|---|---|

In re:                              §
                                    §
Grand Jury Investigation            §           Miscellaneous H-13-606
                                    §

# Opinion on Petition to Suspend Limitations

1.   *Introduction.*

The government has applied *ex parte* for an order to suspend the running of the limitations period for offenses that it has been investigating. The period will not be extended. The statute allows the government additional time to recover evidence from abroad when it has been asked for responsibly. The statute does not serve to extend the period simply because the government has delayed asking for records that it has known for years were both needed and were abroad.

2.   *Background.*

In 2005, the Drug Enforcement Administration and the Internal Revenue Service began investigating the company and its owner – a man – because they think that money from a drug deal had been deposited in a bank account belonging to the company. The account's records may show transfers of more than $73 million from a company account in Mexico with HSBC. The investigation also may have shown that the man and the company had four other accounts with banks in Mexico.

Since 2001, neither the man nor the company has reported a foreign bank account to the Department of Treasury. The man's tax returns from 2006 to 2010 do not list his interests in a foreign account.

On August 24, 2012 – yes, about seven years later – the government sent Mexico a formal request for records from two banks in Mexico. In November, Mexico responded that the banks did not find documents for those accounts nor did they find accounts held by the company or the man.

At the end of November, the government sent Mexico a second, more expansive, request for records from four banks. In February and March of 2013, the government received documents for accounts at one bank but nothing from the others.

3.  *Delay.*

The government's theory is that a small deposit connected to drugs taints every transaction. The government had to send a second request because it forgot to include all of the accounts. Its first application to extend the limitations period – from Washington, D.C. – was unintelligible. While the current application is improved, it neither justifies nor explains the delay in asking for the records from Mexico.

When it asked for the records, the government had been investigating the company and the man for seven years. From the beginning, the government knew that they held a bank account in Mexico from which millions of dollars had been sent to their account in the United States. It has had records showing transfers through other bank accounts in Mexico. During those seven years, the Department of Justice has had the opportunity and resources to ask Mexico for the records.

Limitations periods serve an important function. They compel governments to investigate and prosecute crimes promptly. They are statutes of repose, freeing people from a permanent threat of prosecutorial initiative and from having to defend themselves after records and people are no longer available. The process that is due an accused includes notice, hearing, and promptness – not perpetual jeopardy.

When the United States learns that it is plausible that a crime may have been committed, it investigates. When it has concluded that facts support a claim of criminal responsibility, its first duty is to ascertain whether it is in the public interest to prosecute it. Only after that has been decided, it must gather, preserve, and ultimately disclose the evidence to a grand jury. All of this must be accomplished within the statutory time.

Courts are not authorized to suspend the time limit to excuse inept investigations and bureaucratic sloth. The opportunity for the government to bring these crimes will pass for reasons unconnected to the timing of Mexico's response to requests for documents. Mexico responded within five months to the first request for documents and responded with documents within six months to the second request. The time will pass because of what the United States

has not done. Three agencies – Internal Revenue, Drug Enforcement, and Justice – have had seven years.

To hold otherwise would be to eviscerate the statutes of limitations for crimes with evidence abroad. As in this case, it would get a three-year extension by filing a request for records abroad. Rather than prosecuting cases with vigor and duty, the government could defer a decision to charge crimes by requesting documents from another country on the eve of the deadline for filing. The only reason to suspend limitations must be because the government is waiting on another country to respond to a prompt, responsible request – not because the government waited until the last minute to ask.

4. *Ex Parte.*

The government has applied for this extension without notice to the people whom it would affect. The court can easily imagine circumstances justifying secrecy. The government has not suggested one; it has not supplied a fact in justification.

The public administration of justice should be, well, public. Proceedings should be closed only when absolutely necessary for only as long as absolutely necessary. Notice and an opportunity to be heard is the essence of regular process – the process that is due. With few, narrow exceptions, people should be told when a legal action is being taken against them, including making them subject to criminal charges after the statutory time limit.

A. *Grand-Jury Secrecy.*

The government usually says the targets should not know that it has asked to suspend limitations against them because the application "concerns grand jury matters." The government expansively misreads Rule 6 of the Federal Rules of Criminal Procedure.

For sound reasons that have been recognized for centuries in England and the United States, the rule says that "matter occurring *before* the grand jury" must not be disclosed. The secret that needs to be protected is those things that happen in the presence of the assembled grand jurors among themselves and with the government; the duty silences the participants – like grand jurors and prosecutors.

The information that may have been revealed to it has an independent existence. It will have existed and will have been known by others. People who are subpoenaed before a grand jury are free to talk about that fact. People who testify are free to tell the news media and others

about what they were asked.[1] The duty of secrecy binds only those who are in the room hearing from witnesses and those who deliberate.

Governments frequently call press conferences to announce that they are taking or have taken cases to the grand juries. Announcements of case openings may be even more common, and they all necessarily imply an impending grand jury.

A request by the United States to suspend limitations to get evidence that is in Mexico is not a matter before a grand jury in Texas. The grand jury has no authority over the conduct of the case outside of the grand-jury room, and the duty of secrecy applies only to those matters that are secretly conducted before the grand jurors. The government's agents freely talk about the facts and law of an investigation among themselves and with outsiders. They ask people about facts that have been discovered before the grand jury, although they may not reveal how they know about the fact. The government wants a one-sided chain-mail of silence imposed against people – people whom they call targets, suspects, persons of interests, witnesses, confidential informants, and many other things.

B. *Existence of the Investigations.*

The government takes the position that the "existence of those investigations" should be secret. The government is correct that it ought to be discrete in publicizing its suspicions – not a concern that inhibits attorneys general. Nevertheless, while the government need not share the specifics of its investigation with the targets, it should send them a copy of the motion to extend limitations – even without the exhibits. It may simply file it under seal and notify the affected parties. This is routinely done in cases involving claims of federal contracting fraud.

C. *Revealing Data.*

The government usually says the application should be secret because it could (a) reveal private information or (b) jeopardize the subject's right to a fair trial.

The target's knowledge that the government has requested a suspension of limitations against him is unrelated to the government's concerns. The text of the application and exhibits need not be disclosed to the public.

---

[1] *United States v. Flemmi*, 233 F. Supp. 2d 113, 116 (D. Mass. 2000).

The government has supplied the court with no context of this instance that would make those justifications real. Private data may be redacted – temporarily. The government's solicitude for the defendant's trial rights is dis-ingenuous. It wants secretly to deny him the benefits of a statute, charging him after limitations has run.

D.   *Identity Unknown.*

The government usually says it moved *ex parte* because, as no indictments have been returned, no "opposing party" exists to notify. This point encapsulates the empty essence of the government's behavior. For years, it has had tax returns and other papers with plenty of information. For years, it has had names for target letters, subpoenas, letters to Mexico, and reports among the agencies. It knows whom it expects to indict. Most clearly, it has names to type into an indictment. It also says this when moving to forfeit property that it has seized. Naturally, it knows from whom it was seized in almost all of the cases.

5.   *Conclusion.*

This court's analysis does not suggest that Mexico's responses were anything other than proper in time and substance.

The hardships caused by the government's own poor management may not be used to extend the limits. The statute to suspend limitations may only be invoked when, despite the government's responsible efforts, the information in a foreign country has not been accessible within the period of limitations.

Only a government that is too comfortably furtive would try to turn the Constitutional safeguards of its people – grand juries – into a tool secretly to change the rules against a person.[2]

The government is not asking for more time because Mexico had not responded to its request reasonably within the limitations period. It is asking for more time because of its own inexcusable delay in prosecuting a case in more than seven years.

---

[2] *See generally New York Times v. United States,* 403 U.S. 713, 729 (Stewart, J., seriatim)

The statutes of limitations will not be suspended. The government will furnish this order to the targets within twelve hours of its entry and certify what they have done to this court within 24 hours.

Signed on July 2, 2013, at Houston, Texas.

Lynn N. Hughes
United States District Judge